UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILE DIVISION

| | |
|---|---|
| STEPHEN SHELTON, <br><br> Plaintiff, <br><br> v. <br><br> SOCIAL SECURITY ADMINISTRATION, <br><br> Defendant. | Case No. 3:14-1476 <br><br> Judge Nixon <br> Magistrate Judge Newbern |

To:     The Honorable John T. Nixon, Senior Judge

## **REPORT AND RECOMMENDATION**

Pending before the Court is Plaintiff Stephen Shelton's Motion for Judgment on the Administrative Record (Doc. No. 12), to which Defendant Social Security Administration (SSA) has responded (Doc. No. 13). Shelton has filed his reply to the SSA's response. (Doc. Nos. 14, 15.) Upon consideration of the parties' filings and the transcript of the administrative record (Docket No. 8),[1] and for the reasons given below, the undersigned recommends that Shelton's motion for judgment be DENIED and that the decision of the SSA be AFFIRMED.

## **I. Introduction**

Shelton filed an application for disability insurance benefits under Title II of the Social Security Act on January 18, 2011, alleging disability onset as of October 10, 2011, due to a back injury requiring two surgeries; a left knee injury requiring two surgeries; arthritis in his hands, back, and limbs; spinal stenosis; a right elbow injury requiring surgery; gout; high blood

---

[1]     Referenced hereinafter by page number(s) following the abbreviation "Tr."

pressure; and permanent damage to his back resulting in little mobility. (Tr. 176.) His claim to benefits was denied at the initial and reconsideration stages of state agency review. Shelton subsequently requested *de novo* review of his case by an Administrative Law Judge (ALJ). The ALJ heard the case on June 11, 2013, when Shelton appeared with counsel and gave testimony. (Tr. 31–62.) Testimony was also received from an impartial vocational expert. At the conclusion of the hearing, the matter was taken under advisement until August 23, 2013, when the ALJ issued a written decision finding Shelton not disabled. (Tr. 17–24.) That decision contains the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.

2. The claimant did not engage in substantial gainful activity during the period from his alleged onset date of October 10, 2011 through his date last insured of December 31, 2011 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairments: sciatica and low back syndrome with radiculopathy (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, . . . that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except for no climbing ladders/ropes/scaffolds; and occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling.

6. Through the date last insured, the claimant was capable of performing past relevant work as an exporter, inventory control clerk, quality control tech, and pipeline construction inspector. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from October 10, 2011, the alleged onset date, through December 31, 2011, the date last insured (20 CFR 404.1520(f)).

(Tr. 19–20, 23–24.)

On May 27, 2014, the Appeals Council denied Shelton's request for review of the ALJ's decision (Tr. 2–4), thereby rendering that decision the final decision of the SSA. This civil action was thereafter timely filed, and the Court has jurisdiction. 42 U.S.C. § 405(g).

## II. Review of the Record

The following summary of the medical record is taken from the ALJ's decision:

The records show a history of back problems related to a work injury sustained in September 2006. Imaging studies confirmed severe stenosis secondary to bilateral disc herniations at L4-5 and L5-S1 with compression of the cauda equina and traversing nerve roots. The claimant underwent laminectomy and discectomy at both levels in February 2007. He developed a post-surgical infection at the surgical site, which was ultimately resolved in late March 2007 following inpatient exploration, irrigation, and debridement. Ex. 1F. By May 2007, the claimant was swimming and engaging in physical therapy and reportedly doing very well in recovery. There was no sign of recurrent infection and in late 2007, the claimant was working out and walking up to three miles several times per week. Exs. B2F, B4F. He was released from care at maximum medical improvement in August 2007 with permanent restrictions for lifting no more than 25 pounds. Ex. B10F, p. 1. At the one-year mark of his surgery, he was reportedly "doing well" and did not have any radiating leg pain, though he did report some occasional numbness. Straight leg raise was negative bilaterally and strength was 5/5 in the lower extremities. Exs. B3F, B4F, B5F.

The treatment records show that the claimant did well post operatively and that his back condition remained fairly stable until 2011. The claimant indicated at the hearing it was October 2011 that his symptoms worsened to the point that he could no longer work. Ex. B6F. At that time, the records show that he returned to Dr. Kauffman with complaints of recently worsening back pain radiating into the left leg occurring several times per week, often preceded by lifting and bending at work. Physical examination showed full range of motion in the thoracic spine, only mildly reduced lumbar range of motion, good strength, no tenderness, no muscle atrophy, positive straight leg raise on the left, normal gait, and normal neurological examination of both lower extremities. The claimant's gait and station were also normal. He reported his pain as a "3" on a scale of 1-10. Dr. Kauffman ordered a pain management consultation.

3

There are no other records preceding the claimant's date last insured of December 31, 2011. A few months following the date last insured, the claimant did finally present for initial evaluation with pain management specialist Dr. J. Hazelwood in February 2012. He was no longer working at the time of the visit. He reported that more recently he was experiencing stiffness, leg cramping, muscle spasms and poor sleep. He stated that he used a cane for "trail walking" (Ex. B12F, p. 15). He indicated that his pain was somewhat controlled with Ultram, Lyrica and Naprosyn. Physical exam did show some muscle spasm and limited range of motion, but negative straight leg raise. He was given a TENS unit and by July 2012, he reported significant improvement in his symptoms and an increase in his daily activities. Exs. B10F, B12F.

The remainder of the medical evidence in Exs. B10F, B11F, and B12F show treatment and an independent medical evaluation (IME) that occurred *after* the date last insured. X-ray studies in September 2012 showed normal vertebral body height, normal alignment, and significant degenerative changes at L5-S1 and L2-3 with osteophyte formation along the anterior and posterior L2-L5. However, there was no evidence of instability with flexion or extension. The IME in August 2012 was by Dr. J. Eby. Ex. B11F. Dr. Eby opined that the claimant had some persistent left L5 radiculitis/radiculopathy with suspected foraminal compromise causing depression on the left L5 nerve root. He acknowledged the claimant's functional limitations; but he stated that the claimant's symptoms were "fairly well controlled with medication management" and that he had already been given an impairment rating and permanent restrictions. Ex. B11F.

While being treated by Dr. Hazelwood from September 2012 through January 2013, the claimant reported average pain of 3 on a scale from 1 to 10. The claimant was using a TENS unit, performing home exercises and had been swimming for exercise, all of which reportedly reduced his symptoms and decreased his pain. He stated that his medication regimen allowed him to sleep better, be more active, do household chores, exercise and have better quality of life; and Dr. Hazelwood noted that his back pain was stable. Physical examination showed 5/5 strength testing in the lower extremities, no tenderness in the lumbar spine, positive bilateral muscle spasm, normal gait, and good range of motion in the lower extremities. Ex. B12F.

In review of the opinion evidence, there were two opinions offered by State agency providers. In December 2011, during the time period in question, physician Dr. R. Johnson performed a consultative physical examination. The claimant reported having lower back pain radiating into the hips, worse on the left and exacerbated by rainy weather, bending, twisting, lifting, and prolonged sitting. He stated that lying flat, stretching, swimming, and using a hot tub alleviated his pain. Physical examination showed lumbar tenderness with reduced range of motion, negative seated straight leg raise bilaterally but positive supine straight leg raise on the right only, full range of motion in the extremities, ability to fully squat and rise with assistance, and unremarkable heel and toe walk. Dr.

> Johnson found that the claimant would be limited to occasionally lifting 10 to 15 pounds; standing/walking for at least 2 hours; and sitting 8 hours. Ex. B7F. The evidence was then reviewed and a physical residual functional capacity assessment was completed by DDS physician Dr. J. Millis in January 2012. He found restrictions for light [work] except for no climbing ladders/ropes/scaffolds; occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching and crawling. Ex. B8F.

(Tr. 21–22.)

### III. Conclusions of Law

### A. Standard of Review

This Court reviews the final decision of the SSA to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards. *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016). Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)). In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)). The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the opposite conclusion. *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)). Where, however, an ALJ

fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record." *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

**B. The Five-Step Inquiry**

The claimant bears the ultimate burden of establishing an entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3). The SSA considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1) A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2) A claimant who does not have a severe impairment will not be found to be disabled.

3) A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the Regulations. Claimants with lesser impairments proceed to step four.

4) A claimant who can perform work that he has done in the past will not be found to be disabled.

5) If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

6

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity . . . ." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The SSA can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. *Wright*, 321 F.3d at 615–16; *see also Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the SSA must rebut the claimant's *prima facie* case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity (RFC) at steps four and five, the SSA must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B),

7

(5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

## C. Plaintiff's Statement of Errors

Shelton first argues that the ALJ erred in failing to consider the medical evidence which postdated his date last insured of December 31, 2011, and thus failed to consider the "whole record" as required by Social Security Ruling (SSR) 96-7p. He contends that the ALJ explicitly declined to consider any such evidence even though "evidence less than a year after the [date last insured] revealed chronic residuals from impairments that are undisputed to have originated and exacerbated prior to the [date last insured]." (Doc. No. 12, PageID# 506.) However, the ALJ discussed the medical evidence from "[a] few months following the date last insured" (Tr. 21), and continued with a discussion of the evidence generated throughout 2012 and into early 2013 (Tr. 21–22). The ALJ noted that, in February 2012, Shelton reported to Dr. Hazelwood that he had to use a cane for "trail walking," and that his medications were somewhat successful in controlling his pain. (Tr. 21.) The ALJ further noted that, by July 2012, use of the TENS unit prescribed to Shelton had contributed to his report of "significant improvement in his symptoms and an increase in his daily activities." (*Id.*) The ALJ discussed the September 2012 x-rays which revealed significant degenerative changes in plaintiff's lumbar spine as well as osteophyte formation, and further discussed Dr. Eby's August 2012 conclusion that, despite findings which indicated neuroforaminal compromise, Shelton remained under a 25-pound lifting restriction with symptoms that were "fairly well controlled with medication management[.]" (Tr. 21–22.) Although the ALJ emphasized that the evidence generated during Shelton's insured period was minimal and unimpressive as support for his claim of total disability (Tr. 21, 23),[2] she plainly did

---

[2] Shelton contends in his reply brief that the ALJ failed to consider the nerve block and epidural steroid injections he received during the relevant period. (Doc. No. 14, PageID# 525, ¶ 4.) However, these

8

not fail to consider the evidence generated after the expiration of plaintiff's insured status and the extent to which such evidence supported the existence of additional restrictions. The ALJ thus did not run afoul of any duty of consideration stated in SSR 96-7p. Shelton's argument to the contrary is without merit.

Shelton next contends that the ALJ erred in failing to sufficiently explain why she adopted Dr. Millis's January 2012 assessment because of its consistency with the earlier lifting restriction and treatment notes from Shelton's physicians when the evidence of later treatment included radiological and neurological findings that are inconsistent with Dr. Millis's assessment. Shelton argues that SSR 96-8p requires the ALJ to provide a more specific rationale when determining exertional limitations. However, in reference to the requirements of SSR 96-8p, the Sixth Circuit has explained that "the ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547–48 (6th Cir. 2002). As referenced above, the ALJ explained that the evidence which postdated Shelton's date last insured was, in fact, not inconsistent with the earlier opinion that his only permanent restriction is against lifting more

---

injections were received in March 2010 (Tr. 305–310), well prior to Shelton's alleged onset date. He also argues that the ALJ failed to consider the "attacks" of radicular pain in his left leg which have persisted since his 2007 back surgeries. (Doc. No. 14, PageID# 525, ¶ 2.) The limitation to occasional postural activities which Dr. Millis assessed and the ALJ adopted was the result of Shelton's "[l]ow back pain and periodic left leg pain." (Tr. 442.) Thus, Shelton's radicular left leg pain was taken into account in the RFC determination. The final contention of Shelton's reply brief regarding the evidence from the period between his alleged disability onset and his date last insured is that the October 2011 report to Dr. Kauffman of pain rated a 3 on a 10-point scale (Tr. 432) is a misprint or the result of a misunderstanding, because he "would have never sought treatment if the pain only rated a three on a ten point scale." (Doc. No. 14, PageID# 526, ¶ 6.) But, Shelton gave the same assessment of pain rating 3 on a ten-point scale in his visits to Dr. Hazelwood in 2012 and 2013. And, as noted by the ALJ, the record of Shelton's visit to Dr. Kauffman's office in April 2011 reveals his report of similar symptoms, i.e., that he was doing well with a normal physical and neurological exam; that he was working 20 hours per week; and, that his lower back and occasional left leg pain was stable, allowing him to alternate days when he took a narcotic pain pill with days when he took only Naprosyn. (Tr. 436–37.)

than 25 pounds. She further found that "Dr. Millis's restrictions are also not inconsistent with the other substantial evidence of record including the claimant's testimony":

> When the claimant was questioned at the hearing about what kept him from working since the alleged onset date, he stated that it was "a combo of things", but he offered no specifics. He merely stated that at his age, "a lot of employers aren't going to touch you" and went on to describe that he had applied for hundreds of jobs, even with old employers, but had no luck finding a job. Such rigor in seeking work would certainly suggest the claimant was presenting himself as willing and able to work. When the undersigned asked the claimant if he could physically return to any of his past work, he stated that it was "hard to say" as he had not had the opportunity essentially. He then stated that he knew he could not perform any of the physically demanding work, but again fell short in offering any specific limitations that would preclude the same.

(Tr. 23.)[3] In light of this rationale, the undersigned finds that the ALJ's RFC determination demonstrates adequate consideration of the evidence concerning plaintiff's functional abilities, in compliance with SSR 96-8p. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013) (finding that discussion of claimant's exertional and nonexertional abilities and the supporting evidence is all that SSR 96-8p requires). There are no unresolved inconsistencies apparent from the determination of Shelton's RFC by reference to Dr. Millis's opinion, which the ALJ found supported by the credible evidence generated both before and after Shelton's date last insured.

Shelton next argues that the ALJ erred in giving greater weight to the opinion of the nonexamining consultant, Dr. Millis, than to the opinion of the examining consultant, Dr. Johnson. Shelton additionally argues that Dr. Millis's opinion should be entitled to less weight due to the fact that he is a gynecologist, not an orthopedist or neurologist, and, as such, is not

---

[3] In his reply brief, Shelton repeats these practical difficulties with returning to his prior work, stating that, while he "seriously doubt[s] that [he] could physically perform these jobs," he had applied for "hundreds of job postings," and had received only a handful of interviews because of his medical history, his age, his need for retraining on changes in analytical techniques, and his physical condition which deteriorates with each passing year. (Doc. No. 14, PageID# 526–27, ¶ 11.)

entitled to the additional weight a specialist receives under the regulations when opining on issues related to his or her area of specialty. While it is true that Dr. Millis's opinion is due no deference on account of his specialization, and though he may be retired from his clinical practice (Doc. No. 14, PageID# 526, ¶ 8), he is nonetheless acknowledged as an expert at evaluating disability claims under the regulations. S*ee Potts v. Astrue*, No. 3:07-cv-1284, 2009 WL 2168731, at *5-6 (M.D. Tenn. July 17, 2009) (quoting 20 C.F.R. § 404.1527(f)(2) and SSR 96-6p). As such, his opinion may be given greater weight than that of an examining consultant where an adequate explanation is provided for doing so. *See Norris v. Comm'r of Soc. Sec.*, 461 F. App'x 430, 440 (6th Cir. 2012). The Sixth Circuit in *Norris* held that,

> While perhaps the ALJ could have provided greater detail, particularly as to why the nonexamining opinions were more consistent with the overall record, the ALJ was under no special obligation to do so insofar as he was weighing the respective opinions of nontreating versus nonexamining sources. *See Smith [v. Comm'r of Soc. Sec.]*, 482 F.3d at 876. So long as the ALJ's decision adequately explains and justifies its determination as a whole, it satisfies the necessary requirements to survive this court's review. Accordingly, we conclude that the ALJ did not err in assigning greater weight to the opinions of the nonexamining consultants.

*Id.* Here, in addition to the aforementioned consistency between Dr. Millis's opinion and Shelton's hearing testimony, the ALJ gave the following explanation for favoring the nonexamining consultant's opinion:

> In review of the opinion evidence, there was no opinion offered by any treating provider except for the permanent lifting restriction for 25 pounds when the claimant reached maximum medical improvement. Even after the claimant was examined by Dr. Eby in August 2012 during a period of flare-up, Dr. Eby offered no additional restrictions, deferring to the previously noted lifting restriction. Dr. Johnson offered more restrictive lifting limits for only 10 to 15 pounds. Little weight is given to Dr. Johnson's lifting restrictions because the treating providers only restricted the claimant to 25 pounds and there has been no significant change in his condition to find otherwise. As for the standing restrictions, Dr. Johnson stated that the claimant could stand "at least 2 hours", indicating that the claimant had the ability to perform this activity for longer. Therefore, greater weight is given to the restrictions offered by Dr. Millis. Even though he did not personally examine the claimant, Dr. Millis did have the opportunity to review the claimant's

> treatment records, which offered him a better picture of the claimant's overall capabilities. Dr. Millis also fully completed a functional capacity assessment, including postural, manipulative, environmental, and visual opinion assessments that Dr. Johnson did not provide. There was no indication that Dr. Johnson reviewed any of the claimant's treatment notes.

(Tr. 22.) This is sufficient explanation for assigning greater weight to the opinion of Dr. Millis and is supported by substantial evidence.

Next, Shelton argues that the ALJ erroneously identified his past relevant work as an exporter as available employment (Tr. 23), when, in the next breath, she eliminated that job as among the past relevant jobs to which Shelton could return (Tr. 24). The SSA concedes the error, but argues that it is harmless because the ALJ also identified three other past jobs to which Shelton could return. Shelton notes that the vocational expert identified two of the three other jobs as light jobs under the Dictionary of Occupational Titles (DOT),[4] although they would qualify as medium jobs according to Shelton's testimony regarding their strength requirements as he performed them. (Tr. 53.) Citing SSR 00-4p, Shelton argues that this discrepancy presented a problem which the ALJ failed to resolve, undermining her step-four finding of Shelton's ability to return to past relevant work. However, SSR 00-4p speaks to an ALJ's duties "[w]hen there is an apparent unresolved conflict between [expert] evidence and the DOT." 2000 WL 1898704, at *2 (S.S.A. Dec. 4, 2000). Here, there was no such conflict; the expert stated that his testimony was consistent with the DOT (Tr. 54), and there has been no showing to the contrary. A step-four finding of ability to return to past relevant work may be based on the demands of that work as the claimant actually performed it or as it is generally performed in the national economy. 20 C.F.R. § 404.1520(e); SSR 82-61, 1982 WL 31387, at *1–2 (Jan. 1, 1982). S*ee also, e.g., Hohnberger v. Comm'r of Soc. Sec.*, 143 F. Supp. 3d 694, 699–700 (W.D. Mich. 2015). Having

---

[4] The expert had earlier testified that the quality control technician and pipeline construction inspector jobs are "light to medium exertion" jobs. (Tr. 42-43.)

12

elicited expert testimony to the existence of past relevant jobs requiring only light exertion, and absent any indication by Shelton's counsel that a conflict existed between that testimony and the DOT, the ALJ was entitled to rely on such testimony to support the determination that Shelton could return to his past relevant work as it is generally performed. *See Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006). The undersigned concludes that the ALJ's identification of the exporter job as available to Shelton was indeed harmless error and that the step-four determination that Shelton could return to his past relevant work is supported by substantial evidence.

Finally, Shelton argues that the ALJ "failed to include any statement whatsoever regarding the role, if any, pain plays in [his] limitations." (Doc. No. 12, PageID# 508, ¶ 6.) While Shelton focuses this argument on the ALJ's boilerplate assertion that his "statements concerning the intensity, persistence and limiting effects of [his] symptoms are not entirely credible" (Tr. 20), he overlooks that this assertion is fleshed out in later pages of the decision which describe the clear crux of the disability determination as the analysis of his subjective complaints of disabling pain versus the medical and testimonial evidence suggesting an ability to perform work activity. Between identifying a lower back pain syndrome as one of Shelton's severe impairments (Tr. 19), and relying on an assessment of work-related functional ability that explicitly accounted for the effects of his pain (Tr. 447), the ALJ made clear that Shelton's pain was the primary limiting factor in the determination of his disability claim.

In sum, the decision of the ALJ is supported by substantial evidence on the record as a whole. That decision should therefore be affirmed.

## IV. Recommendation

In light of the foregoing, the Magistrate Judge recommends that Shelton's Motion for Judgment on the Administrative Record be DENIED and that the decision of the SSA be AFFIRMED.

Any party has fourteen (14) days from receipt of this Report and Recommendation in which to file any written objections to it with the District Court. Any party opposing said objections shall have fourteen (14) days from receipt of any objections filed in which to file any responses to said objections. Failure to file specific objections within fourteen (14) days of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).

**ENTERED** this 7th day of December, 2016.

ALISTAIR E. NEWBERN
United States Magistrate Judge